Yes, good morning, Your Honors, and may it please the Court, I'm James Laughlin, and I represent the appellant, Mr. Ramirez-Martinez. For the Court's permission, I'd like to reserve two minutes of my time for rebuttal, and I'll keep an eye on my own time. This appeal raises two issues, one going to Mr. Ramirez's conviction and one going to his sentence. If it's all right with the Court, I'd like to start out by talking about the sentencing issue. Three key points are not in dispute. First, under Guideline Section 4A1.2e, criminal history points may only be imposed on Mr. Ramirez's 1990 conviction if the instant offense occurred before February 5, 2007, which is 15 years after he was paroled in that case. Second, the instant offense of being found in the United States without permission following deportation is a continuing offense that commences with the illegal entry and ends when the alien is discovered by immigration authorities. And third, the date Mr. Ramirez was found, and therefore the date the instant offense ended, was July 9, 2007, which is outside of the applicable 15-year window. The only dispute is whether or is when the offense began. And I have a question about that. There are receipts in the record from the Cerritos Community College, and the defendant registered and paid for a class that began January 8, 2007, and ran through May 18. And then he registered again for another class that ran from May 27 to July 13, 2007. Is that evidence of the united States beginning on January 8, 2007? But is it sufficient to carry the burden of proof on that question? No, it isn't, Your Honor, and here's why. The government does not dispute the legal premise in the probation officer's report, which is, and under this Court's case law, in order for a preceding date to be part of the instant offense, Mr. Ramirez would have had to have been in this country continuously up until his founding date. Now, the evidence Your Honor pointed to and the government points to shows that he's here at certain times, but that is not evidence that he was here continuously. Well, I guess that's the question, because the time period covered that I just described went from January 8 to July 13, and he concededly by you was found on July 9. Yes. So if that evidence is sufficient to permit an inference that he actually was in this country and he was here attending the classes that he signed up for, there was no break in those classes between January 8 and July 9. So I mean, I guess you could skip class and leave the country, but just in terms of what we should make of that. Well, Your Honor, actually, I went to college in upstate New York near the Canadian border, and my friends and I would regularly cross the border because the drinking age was much lower in Canada than in the United States. I attended class full time. I never skipped a class, but that didn't stop me from leaving the country periodically. And that's the key fact that's missing from this record, and that's why the Probation Office correctly noted that in the absence of some evidence that he was here continuously, day by day, from some point up through the founding date of January 9 or, I'm sorry, July 9, then we must presume that July 9 is the date of the offense that begins and ends there. The problem was that the Probation Office never made the next logical connection, which is given that fact that it found Mr. Ramirez's 1990 conviction was too old to be counted under the 15-year rule. And the district court missed the same thing when it adopted the probation officer's guidelines calculations. He could have, regardless of the Cerritos receipts, he could have left the country any time before July 9. He has to be found by the United States, discovered. He has to be discovered in this country, right? Yes. To... To end the offense. End the offense. Right. So, he could have left on July 8. Right. If he took a day trip across the border and then came back, his current found in offense runs from July 8 to July 9. So, it just seems like they didn't dot all their I's and cross all their T's on this. Yes, Your Honor. And I think this is the kind of case that a plain error review is meant for because it's all there in the pre-sentence report. Unfortunately, the Probation Office missed it, the parties missed it, and the district court missed it. It's just a matter of, you know, this Court acknowledging it and giving the district court a chance to correct the error. The government, however, is attempting to challenge the underlying finding as to the date. But as I point out, they point to the school records. They also point to him getting a driver's license. But they all have the same problem. They show that he's in the country at certain points. But they don't show continuous presence because there wasn't somebody saying, I live next door and I saw him every day. Correct. Right. And did the government put in all that evidence at the sentencing? That evidence was in the probation report. It was in the probation report. Except for the school records which were submitted, attached to the defense counsel's papers. So normally we would take the PSR. And unless that date was objected to, we would, or at least the district court would have to consider that date as true. Unless it's objected. Did you object or did counsel object to that date? No. Well, there was no objection to the criminal history calculation. But also the government didn't object to the underlying factual premise on page 5 of the report. The date. The court said that July 9th is the beginning and end date for guideline calculation purposes. So if no one objected to the PSR, then we accept that fact. Correct. And as I said, it's just that nobody made the next step to realize that, you know, if you count backwards from that date 15 years, the 1990 conviction can't be counted. So that's procedural error because the district court did not calculate the guidelines correctly? Yes. Okay. I see I have about three minutes left. If the court has any questions on the conviction issue, I'd be happy to answer those. Otherwise, I'll leave the remaining time for rebuttal. All right. Thank you. May it please the Court. Eric Silber with our Criminal Appeals Section on behalf of the United States. And I would note I have a counsel table with me, Jeff Mitchell, who was the AUSA who tried this case. I think the issue of whether a defendant here was here continuously is a bit of a red herring in this case for two reasons. One of which, the 15-year date runs from the date of conviction. And the date of conviction here is not when he was found by ICE, which is in July of 2007. I refer you to page 43 of the excerpt of records, which is the indictment itself. The indictment alleges that he was found on July 14th, 2004, which was the date he had applied for a driver's license in this case. There was testimony about that at trial, that he had applied for a driver's license. An excerpt of record, page 53 and 54. And the driver's license records were introduced. This was Exhibit 20. Now, defense counsel in his brief has said, well, the government argued a different found and date to the jury. But the jury was read the indictment. This is an excerpt of record, page 227. They were told that date. They were given an honor about instruction date. This is an excerpt of record, page 231 and 232. They were told they didn't have to find the specific date alleged in the indictment, but they had to find it was reasonably near that date. And they convicted, and this is an excerpt of record, page 239. They convicted the defendant of the charge in the indictment, which is that date. Now, I guess the nature of 1326 law comes into play here. It's a continuing offense, and it starts at reentry and continues until the alien is found by ICE. But being found by ICE is only important because it cuts off responsibility. So, for example, for statute of limitation purposes, ICE can't have found someone once, delayed prosecuting the case for six years, and then find the defendant again and prosecute them and get around the statute of limitations. Or you can't move someone from California to Maine, find them again and say venue exists in Maine. But this Court has held that aside from those issues, the specific date, all the government has to do is show the defendant was found on that date. This Court has said, when the issue is whether or not the defendant was found in this country on a particular day, it does not matter who found him. What matters is that he was found on that date. And that is Jimenez-Borja, 378 F. 3rd and 858. So, I mean, that's this issue of whether he was condoned here doesn't matter. He was here on that date, which was within the 15-year period. And at a minimum, the district court doesn't plainly err in relying on that date here where there's no objection made. I would also point out that we don't have to prove he was here the whole period of time. But we have to prove that he was here in the five months preceding this, as Judge Graber, as you mentioned. I mean, this was really a five-month window, even if we ignore that issue. And say from the time ICE found him in July 2007, going back to what would have been the end of the 15-year period, which is February 2007. As Your Honor noted, they submitted college records. But on top of that, they submitted work records. And this is at Government Extra Record, page 3. It said not only the defendant had worked there two years, but he had a flawless attendance record. All we have to do is show by a preponderance of the evidence that the defendant is here. There is no evidence that he traveled. In fact, he submitted evidence that said the opposite. I apologize. It doesn't appear to be in the extra records that were submitted by the parties. But he submitted two letters, one by his sister and one by his aunt. I know that they're pages 21 and 23 of the exhibit filing, saying that he had either never left the United States or hadn't left since he initially came here. It also, the court didn't have to kind of ignore its common sense. Defense counsel indicates to you, well, you know, he used to cross the border to go to Canada, but he's here unlawfully. And the district court isn't required to ignore common sense, particularly under a preponderance standard, to say that someone who's here unlawfully, who would have a hard time getting back in, wouldn't do those types of things. When you see this employment evidence that we have, which is, again, at Government Extra Record 3, and this is what he submitted for his benefit at sentencing, to say he was here two years and had a continuous, excuse me, flawless attendance record, I think the court doesn't point the mirror. But I would note on the continuous issue, there was evidence the defendant was continuously here. It's not that there was no evidence of that. I would point this court actually first to the statement of defense counsel in this case. And this is at Extra Record page 49. This is the opening of trial. Since March of 1995, my client has remained in the United States. He was never deported, and he's lived here continuously. Now, it's true, of course, that the jury rejected that he had been here continuously in the sense that they found he'd been deported. But it's not wrong, and it's certainly not plainly error, plainly erroneous for the district court at sentencing to rely on that, at least for the rest of the period of time. I would point to the defendant said the same thing in his sentencing paper at Extra Record page 269. Again, said he'd lived in the United States since age 5 at sentencing hearing at page 14 to 15 of the Extra Record. He said that he lived in ñ came here when he was 5 and lived in the United States since then. The district court specifically asked the defendant, and this is at Extra Record page 28, that you've been in the United States since age 5. And the defendant, this is the defendant personally that's being asked, says right on this record. And, again, he submitted letters at sentencing. He submitted his fiancée's letters saying that he lived here continuously there at said age 6. And he provided letters from multiple family members that he hadn't left the United States. Well, at a minimum, shouldn't have that been litigated given that the PSR gives a date that's outside the 15 years? Well, I would say two things. One is that there was never an objection by the defendant to this, and that's ultimately the problem. No, but the district court, when we review sentences, the district court is on. It has to calculate the guidelines correctly. And given the PSR and no objection to the PSR, on the face of it, the district court did not calculate the guidelines correctly. We can't go in and try it up here. Oh, he said this, and she said that. Well, the problem here, ultimately, is twofold. Again, one is the district court sat through the trial. That's the worst thing that could happen to you, is that you take the sentence and you put in evidence when it goes back to the district court and correctly calculate the guidelines. That's true, but that's always true when the defendant doesn't object and the standard is plain error. And even if the standard wasn't plain error, it would still be a harmlessness inquiry here. And we've shown on this record that it's harmless. Again, if you look at the name, what he's talking about. No, being criminal history points, it's harmless. Well, the calculation isn't harmless. I agree with Your Honor that if the district court's wrong, it's not harmless here. I mean, if the district court wrongly calculates criminal history, that has an effect on the sentencing, and you should remand it. You should do it correctly. I don't understand why you're, I mean, it should be done correctly. I don't see how you can argue that proposition. We don't argue. It's not even a big imposition on the district court to do a sentence correctly. That's their job. We 100% agree that the court should do things correctly, but as we indicated here, the court did on this record. That's the ultimate problem is that the defendant was charged with being found on a date. If it did, I'm not sure it did, and I don't think it knew it did, if it did, because it was simply not an issue. Well, but again, the court sat through the trial and had the indictment and knew the date was July 14, 2004, which was in the. . . The indictment was on or about, you said. But this court has held in Casterline, for example, that seven months off of a date isn't on or about the date, particularly when you're instructed like this. So the court couldn't have concluded under this court's precedent that three years is on or about the date. It just simply couldn't have been done here. And again, the court had. . . Ultimately, the issue focused on two things, even if the court ignores the charge date here, and we argue that that's decisive. But you still. . . You're only talking about that five-month period between February of 2007 and July of 2007 in which the defendant himself submitted evidence that he was here. He submitted his employment records, which said he had, again, flawless. . . You're just repeating yourself. Do you want to address the other argument? I'm happy to address any questions that this court has about the conviction. As we indicated in our briefs, we don't think that the jury would have interpreted it this way as a comment on defendant's failure to testify, much less naturally or necessarily have that comment. And in light of the single, isolated comment, the failure to stress this, the inference of guilt to the jury, and the instructions that were given here, which are the same instructions that were used in cases in which this court has found harmless errors such as Smith and Tarallo, that any error in any of that would be harmless. If the panel has no further questions, I would be happiest to. . . Well, but there was a reference directly to the defendant. There was a reference directly to the defendant. But even if the jury interpreted it as a reference to the defendant personally rather than the defense, which I don't think is clear, defendant's statement was admitted at trial in this case. And so I think the natural interpretation is to interpret it as to defendant's statement. In fact, if I could direct the Court to Excerpt of Record, page 67 to 68, this is exactly how the statement was talked about when it was admitted. Question. You testified. . . This is at line 17 of page 67. You testified a moment ago that you asked the defendant if he was previously deported. Is that correct? Answer. That's correct. Oh, slow down. Oh, I apologize, Your Honor. I'm sorry. Question. And he told you that he had not been deported. Is that correct? That's correct. Answer. That's correct. Question. Do you have reason to believe otherwise? Answer. Yes. Question. What's your reason based on? Then this is over on page 68. Answer. Basically what I found in his A file, which is a warrant of deportation. This is the same way the question was framed in closing, was this comes down to what do you believe, the warrant of deportation with his fingerprints on it or the defendant. So even if there's reason to believe they're referring to the defendant personally rather than the defense. Well, that's what they're referring to, the defendant personally. Well, I think context here actually suggested that it was the defense. But even again, even if it's defendant personally, that's what there's that statement in the way it was introduced at trial which suggested that that's what the government was referring to and not his silence. And again, the standard is naturally and necessarily referring to the silence. It's not possibly referring to the silence. It's not possibly referring to it. It's naturally and necessarily. And given that you have a defendant's statement in this case, that isn't a reasonable interpretation. In fact, I would note that defense counsel didn't have that interpretation at trial. He didn't object. The district court didn't have that interpretation. It didn't interrupt the proceedings in this case. And in the context of this trial with defendants, and again, it was defendants basic sculptory statement here, not an inculpatory one. They had from defendant exactly what he would have testified to if he had taken a standard trial. He had. Well, what makes you think the district judge would have interrupted the proceedings? I think certainly if the judge had understood it as a comment on the failure to testify, it would have, just as defense counsel would have objected if he had heard it at the time as a comment on defense failure to testify. But in any event, I mean, as I noted, even if the court has some concerns about that comment, and as we indicated in our briefing now, I think it's not justified, is this is a classic case for harmless error because it is a single comment, a single isolated comment. It doesn't stress the efforts at guilt at all. And it actually is the same instruction this Court upheld in Smith. I mean, in Smith, this was the instruction that this Court said rendered harmless in those circumstances. You know, I think we've had, I know at least one other case where this issue came up, but it seems like the government, the prosecutors are always pushing the line, pushing the line, pushing the line. And some judges let them. Some judges let them. Why even back off? Why even get into it? Why even get into it? You know, you don't need to do it because the jury is going to think, well, didn't testify, you know. What does that mean? Well, the thing that you have here is, I want you to keep in mind, in this Court indicated in Williams, is you don't have the perfect syntax and kind of the rush of a trial. What you have here is the prosecutor who is told when they leave the day before trial, the defendant is going to testify. He then shows up the next morning and is told the defendant is not going to testify and go right to closing. And so we really didn't have the time to think about precise word choice that you would necessarily have if he had known in advance the defendant hadn't taken the stand in this case. You just talk about what the evidence shows. But ultimately, the question the jury had here was the question that was asked, which was, do you believe the defendant was or wasn't deported? And what he was really just saying is... Well, he was just saying, well, look what we have here. There's no other evidence. Well, that's what he was trying to get at. But he didn't say it that way. Well, but he did say, I mean, what he did say in context is, do you believe the warrant of deportation with its fingerprint on it, or do you believe the defendant, they've offered nothing, no evidence, no witnesses on getting on to the idea that he hadn't been deported? And when the government referred to it later, this is at Excerpt of Record 214, again, it's what happened was the defendant was deported. They've offered no evidence to the contrary. Again, setting up the evidence. Later at 214, does common sense tell you the defendant was deported or that there was some type of clerical error and maybe he may not have been deported? Again, what the prosecutor meant to say in context, and I think that that's what the jury would have... When you use the word defendant, then what's the defense counsel do? Get up and object? You're just pointing that problem out? Well, that, I mean, to some extent, that's the problem. You go to the sidebar? A lot of judges don't let you come to the sidebar. Well, it seems to me there's two ways I guess to correct it, one of which is to do it and ask for a period of instruction or not because you perceive some prejudice. The other would be to just let as what happened here anyway, which is to let the general instructions take care of it. And it's important to look at the context of this because you're talking about 15 to 16 pages from the time the prosecutor makes this comment to the jury instructions. In that time period, you have the defense get up, and this is at Excerpt of Record page 221, and say my client has no obligation to testify. The government has the burden of proof. You have Excerpt of Record page 224. The government get up agreeing with defense counsel that the government has the burden of proof. And then you have the court instructing that at page 228 that the government has the burden of proof, defendant has no obligation to testify. In about a 15-page period, you have the defense saying that the government agreed and the court instructing. And, again, it's the same instruction that this court applied in Smith and rendered any error harmless from a similar type of comment. And you also have, aside from just this instruction, you also have that the statements of counsel aren't evidence, which is a similar instruction that this court upheld in Taralla. This court said that that rendered a isolated comment that didn't stress guilt harmless. And it's important to recognize the comment here. At most, it's an inferential comment. It doesn't directly say that you should find defendant guilty because he failed to testify. It doesn't highlight that. It's, at best, a vague and ambiguous comment. And so if there is an error and we disagree with that, we would argue that there's no prejudice from it. If the panel has no further questions, we would be happy to submit. All right. Bill. First of all, the government, again, mentions the indictment. I explained in the reply brief why the indictment doesn't really matter. But there's one more point about that I want to say. Mr. Ramirez was not found when he applied for a driver's license in 2004. You are not found until you are found by immigration authorities. He was no more found when he applied for a driver's license and was found when he was arrested by local police on a misdemeanor charge in 1999. If he was, this prosecution is untimely. But, of course, the government wouldn't take that position because that's not the law. The law is he's not found until 2009 when he was found by immigration authorities. The fact there's an earlier date in the indictment that's not linked to anything doesn't mean anything. This is a plain error review on this point, though, correct? Yes. And so we have to be able to find that substantial rights were affected. Yes. And do you agree or disagree with the proposition that there are letters and other documents, including the work records and others, that by a preponderance of the evidence demonstrate continuous presence from at least January of 2007 forward? I strongly disagree with that, Your Honor. And I think that the records that they're pointing to, particularly the work records, are just like the records from the school district they point to. They show that perhaps he was here at certain points, but it does not establish that he was here at certain points. What about the letters that were referred to that allegedly say continuous presence? That I would have to go back and look at those letters. As I said, they aren't in the extra record, and I haven't looked at them for a long time. But let me just ask you this more as a hypothetical question then. If there are such letters that were before the court that said this person has been here continuously during the relevant period of time, how could we find that there's an effect on his substantial rights by basically requiring a futile act to go back and do it over again? I don't think it would be a futile act, Your Honor, because I think that the – certainly the statements that the government picked out of the defense counsel's opening statement and Mr. Ramirez's statements of sentencing, those are much different proceedings. Somebody says I've lived consistently in this country since I was born. Again, I have left the country occasionally. When something like that is said in an informal basis, I don't think that it's the same thing as establishing by a preponderance of the evidence that he never crossed the border for one day between February 5th, 2007 and January 9th, 2007. It doesn't there have to be a finding by the district court on this evidence? I mean, I don't see how – I mean, I realize we have to apply the substantial rights standard, but I don't see how we have the evidence before us to make a finding effect on that. I agree, Your Honor, and I would say that the question of what's in the record goes to whether there was error. But the substantial rights portion of it, I think, is established by the fact that this did result in a 15-month bump and that Mr. Ramirez is entitled to have this finding made by the district court before he serves those 15 months. Keep in mind, this isn't a case, as the government keeps suggesting, where the court looked into this and made a decision about it. The court just missed it. We can see the defense did not object to those three points being part of the criminal history. At the same time, the government didn't object to the statement on page 5 of the presentence report saying the only relevant conduct for the – for this offense is January 9th, 2007. The only thing that was missing was the parties, the court, the probation office making the connection, and that's why I should go back to the district court for them to be able to look at that. Unless the court has any further questions, I'll submit. Thank you. Thank you very much. The matter is submitted. And now we go to U.S. v. Dubo.
judges: Pregerson, Graber, Wardlaw